AO 106 (Rev 04/10) Application for a Search Warrant

AUSA Geraghty

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
CELLULAR TELEPHONE ASSIGNED CALL NUMBER (614) 974-4488
UTILIZED BY DESHAWN LEWIS, WITH SERVICES PROVIDED BY
T-MOBILE

)
)
)
)
)
)

Case No.  2:21-mj-646

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of the Application, incorporated herein by reference.

located in the          Southern          District of          Ohio          , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956 (a)(1)(A)(i) | Laundering of monetary instruments |
| 21 U.S.C. § 841(a)(1) | possession with intent to distribute a controlled substance |
| 18 U.S.C. § 1956 (a)(1)(B)(i) | Laundering of monetary instruments with the intent to conceal or disguise the nature |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days:          ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Samuel Chappell ATF TFO**
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10-7-21

*Judge's signature*

City and state: Columbus, Ohio

US Magistrate Chelsey M. Vascura
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING CELLULAR TELEPHONE ASSIGNED CALL NUMBER (614) 974-4488, UTILIZED BY DESHAWN LEWIS, WITH SERVICES PROVIDED BY T-MOBILE, A WIRELESS TELEPHONE SERVICE PROVIDER HEADQUARTERED AT 4 SYLVAN WAY PARSIPPANY, NEW JERSEY 07054 | Case No. _____ <br><br> Filed Under Seal |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Samuel Chappell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(614) 974-4488,** with listed subscriber(s) Deshawn LEWIS (the "Target Cell Phone"), whose service provider is **T-MOBILE**, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, New Jersey 07054.The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Columbus Ohio Police Office (Columbus Police Department) currently assigned as a Task Force Officer (TFO) with the bureau of Alcohol Tobacco and Firearms (ATF). The Columbus Division of Police has employed me since 2007.  My responsibilities as a Task Force Officer include the investigation of violent criminal street gangs, narcotics

traffickers, money launders, and firearm related crimes. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. By virtue of my experience and training, I am familiar with cellular telephone search warrants. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

3.　　Based on my training and experience, I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined cocaine, cocaine base ("crack"), heroin, marijuana, methamphetamine, oxycodone, heroin, fentanyl, and other controlled substances that are, by themselves, illegal to possess. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

4.　　I have participated in various aspects of drug-related investigations. I have participated in controlled purchases of controlled substances utilizing confidential sources and undercover law enforcement agents and officers. I have prepared affidavits submitted in federal court in support of applications for criminal complaints, search warrants, tracking warrants, and/or arrest warrants. I have participated in numerous investigations involving a variety of investigative techniques, including physical and electronic surveillance methods; controlled purchases; the analysis of a wide variety of records and data, including pen register and trap and trace data as well as cell phone location data; and the debriefing of defendants, informants, and

witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

5.  Through investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the methods used by narcotics traffickers to distribute, transport, store, import, and safeguard controlled substances.  I know that narcotics trafficking organizations have developed a number of methods to insulate their illegal activities from law enforcement detection. For instance, I know that members of narcotics trafficking organizations routinely utilize electronic communications facilities, including cellular telephones and mobile messaging applications such as Snapchat, to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members; that organization members routinely use coded references in an effort to avoid law enforcement detection; and that the communication of time-sensitive information is critical to the successful conduct of these organizations' illegal activities. I am also familiar with narcotics traffickers' use of prepaid cellular and cellular phones, normal land line phones, public phones, debit calling cards, counter-surveillance, and the use of false and/or fictitious identities. Finally, I am familiar with the coded language used by narcotics traffickers during conversations in an attempt to disguise the true meaning of their conversations.

6.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3

## BASIS AND PURPOSE OF AFFIDAVIT

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1956 (a)(1)(A)(i) (Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity), 18 U.S.C. § 1956 (a)(1)(B)(i)(Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity)  and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) have been committed and are being committed by Deshawn LEWIS.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

9.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i);

## PROBABLE CAUSE

10.     This affidavit is submitted for the limited purpose of establishing probable cause in and therefore contains only a summary of the relevant facts. I have not included each and every fact that I, or others, have learned during the course of this investigation.   The information set forth in this affidavit is based on my own participation in the investigation, information I

4

have received from other law enforcement officials and from my other agents' analysis of documents and records relating to this investigation. As one of the case agents on this investigation, I am familiar with the investigative efforts of other agents/Columbus Police Detectives who have worked on this investigation.  Further, I am familiar with the evidence gathered through the issuance of search warrants, subpoenas, and information provided to myself and other agents by cooperating individuals and informants.

11.     The United States, including the bureau of Alcohol Tobacco and Firearms (ATF) and the Columbus Division of Police (CPD) is conducting a criminal investigation of Deshawn LEWIS AKA "Crippy" and "Cripface" for violations 18 U.S.C. § 1956 (a)(1)(A)(i) (Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity) 18 U.S.C. § 1956 (a)(1)(B)(i)(Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity)  and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) .

12.     As more fully established below, probable cause exists to believe that Deshawn LEWIS operates a Drug Trafficking Organization (DTO) which spans several states including Ohio and Texas. LEWIS operates his DTO with Mario "Big Rio" Sydnor Sr., James Haley, Mario "Lil Rio" Sydnor Jr., Michael Onyejekwe, Nashiba N. Radcliff, and others known and unknown to investigators. The investigation has shown that the LEWIS DTO traffics in fentanyl, methamphetamine, cocaine, and marijuana. Members of the DTO use the identities of drug users to rent homes and ship packages. The rental homes are used as locations from which to traffic narcotics. LEWIS and members of his DTO likely launders their drug proceeds through at least one bank account.

5

13.     However, due to the DTO operating in several states law enforcement does not know exactly where and how LEWIS sells his drugs, the location where LEWIS stores his drugs, the identities of all of LEWIS's customers, or whether he launders drug proceeds through any other financial institutions. Therefore, there is probable cause to believe that knowing LEWIS's location and being able to possibly discover patterns of movement for LEWIS, will assist law enforcement in determining these unknown pieces of information.

14.     Through my training and experience, I am aware that it is common for narcotics traffickers to use cell phones, often as a vital part of their business. Narcotics traffickers frequently use cell phones to communicate with customers and suppliers via SMS or text message, voice calls, video calls, and social media. Narcotics traffickers often use cell phones to take photographs or videos of themselves, their associates, their property, and their products, including illegal narcotics. Since the narcotics trade relies so heavily on communication narcotics traffickers are rarely without their cellphone.

## CRIMINAL HISTORY

15.     LEWIS has felony arrests for narcotics and firearm possession. He has at least one felony conviction that could result in a sentence of more than one year in prison.

- Franklin County Court of Common Pleas Case 04CR003007 for felony possession of drugs
- Franklin County Court of Common Pleas Case 05CR000787 for carrying a concealed weapon.
- Franklin County Court of Common Pleas Case 09CR001870 for carrying a concealed weapon.
- Franklin County Court of Common Pleas Case 09CR003072 for felonious assault.

6

- Franklin County Court of Common Pleas Case 09CR003587 for carrying a concealed weapon.

16.     LEWIS as his street name suggests is an associate and or member of the Crips criminal street gang. LEWIS is often observed with members and or associates of the Short North Posse (SNP) criminal street gang.

## NARCOTICS TRAFFICKING

17.     On or about June 22, 2021, investigators interviewed a confidential source (hereafter referred to as CS1) about drug activity related to the west side of Columbus, Ohio. While speaking with CS1, officers obtained information about a drug house CS1 regularly purchases narcotics from.  CS1 stated the drug house is located close to the corner of South Central Avenue and Union Avenue.  CS1 stated the house is one house south of the corner house and that everyone enters through the rear alley.  CS1 stated you have to open a wooden gate and walk through the back yard, then go into the back door of the residence.  CS1 further stated that there is a white guy who usually serves the drugs to the customers, but that they are not his drugs.  CS1 stated the house is run by a black male who goes by the name of "Crippy" or "Cripface".  CS1 stated you will never catch him there though because he is the boss.  CS1 stated there is usually a group of black males who are armed that operate the house for him.

18.     Officers provided CS1 with a map to verify the exact location, which was verified as 430 South Central Avenue Columbus, OH 43223. CS1 stated that you can buy any type of drug from this house and that it is the busiest house in the area as far as drug related activity.

19.     After interviewing CS1, investigators began conducting surveillance of 430 South Central Avenue Columbus, OH 43223. Investigators were able to corroborate the information provided by CS1, along with additional evidence obtained through surveillance. LEWIS also was

7

observed and photographed by investigators on June 30, 2021, at 430 South Central Avenue Columbus, OH 43223. LEWIS was observed opening the rear door of the residence for multiple individuals coming and going from the residence who were suspected of buying narcotics, corroborating information provided by the confidential informants.

20.    On July 1, 2021, a search warrant of 430 South Central Avenue resulted in the seizure of approximately 30 grams of crack cocaine, 19 grams of fentanyl, 1 handgun, $929 dollars in cash, and multiple items of drug paraphernalia. During the execution of the search warrant by Columbus Narcotics INTAC team, Mario Sydnor Jr. was found in the upstairs bathroom of the residence. Mario Sydnor Jr. was observed by tactical officers attempting to dispose of the recovered handgun, which he ultimately threw out the upstairs bathroom window onto the roof of the residence. Additionally, Mario Sydnor Jr's cell phone was recovered at the base of the bathroom toilet and the recovered narcotics were found floating in the bowl of the toilet. Almost the entirety of cash seized from the search warrant was located on the bathroom floor next to the toilet. Based on this evidence and observations made by the Narcotics tactical team, Mario Sydnor Jr. was placed under arrest.

21.    At the time of entry by Columbus INTAC Mario Sydnor Jr. was the only individual in the upstairs of the residence at the time. Nine additional individuals were detained by Columbus INTAC during the execution of the search warrant. All of the individuals were located in the basement of the residence, seven (7) of the nine (9) being local known street level prostitutes. These nine (9) individuals were interviewed by investigators.

22.    During the interviews, several of the individuals referenced the name "Crippy" or "Cripface." Through law enforcement databases and social media investigators were able to identify Crippy/ Cripface as Deshawn LEWIS with a DOB: 4/12/1985 and SSN: 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.

8

Additionally, investigators learned that LEWIS has an email account of ripmeefoo@gmail.com
and a ICloud account of cripface4454@icloud.com. Investigators identified the Instagram
account of 1_helluvanigga@instagram.com , the Facebook account of "Cutboy Crippy" as
belonging to LEWIS.

- The following are summaries of pertinent information from statements made by the
  individuals (hereafter referred to as CS2-CS7) from inside of 430 South Central Avenue.
  CS 2 stated he/she regularly purchases fentanyl from 430 South Central Avenue, and it is
  Deshawn LEWIS's dope house and that Deshawn LEWIS was just at the house the
  previous day.
- CS 2 was shown pictures taken by investigators during the time of surveillance on June
  30, 2021, at 430 South Central Avenue. CS 2 identified one of the males as Deshawn
  LEWIS and the other as "MJ," who is an associate/friend of Deshawn LEWIS and works
  for him at drug houses.
- CS 3 provided Deshawn LEWIS runs the drug house at 430 South Central Avenue.
- CS 3 provided Deshawn LEWIS is not just a "dope boy," he's the "plug." (A Plug refers
  to a narcotics trafficker who has a direct connection with a large/international narcotics
  supplier.)
- CS 4 provided 430 South Central Avenue belongs to Deshawn LEWIS.
- CS 4 provided Deshawn LEWIS was only in town for two days and that he put everyone
  in the house to work.
- CS 4 provided the people in the house sell fentanyl, crack cocaine, and possibly other
  narcotics.
- CS 4 provided Deshawn LEWIS makes $120,000 per week selling narcotics. CS 4
  provided Deshawn LEWIS was at 430 South Central Avenue two days prior to the
  execution of the search warrant, and that he had everybody in the house counting over
  $100,000 using money counters.
- CS 4 provided that Deshawn LEWIS goes to Houston and that he is only in town until
  Friday (07-02-2021) of this week.
- CS 5 provided he/she came to 430 South Central Avenue to buy and use narcotics.
- CS 6 provided that he/she was at 430 South Central Avenue to use dope.
- CS 6 provided that 430 South Central Avenue is run by Deshawn LEWIS and that when
  he comes to re-up the house (resupply narcotics) or collect the cash he will lock everyone
  in the basement.
- CS 6 provided that Deshawn LEWIS was just at the house the previous day, but he is
  usually in Texas.
- CS 7 provided 430 South Central is Deshawn LEWIS's drug house.
- CS 7 provided that the male who was selling out of the house at the time of the search
  warrant is "Nef" or "Nephew" (Mario Sydnor Jr.).

- CS 7 was shown a picture of a male from surveillance pictures taken by investigators on surveillance as 430 South Central Avenue on June 30, 2021. CS 7 identified the male as Deshawn LEWIS.

23. During the search of 430 South Central Avenue investigators located a paper notebook in the kitchen drawer. Investigators observed the handwritten letter which stated, "Big Dogg Crippii run the show these bitch's anit shit and will always be nasty ass hoes so rememberthese words keep em in your head bitch boy when the boss talks you should close your mouth we anit got shit to ever talk about better keep your ass moven shit he's the reason your even doing what your doingso keep it pushing 2x". A second page from the notebook read:

- Ashley-paid 10
- Butters paid 10
- Crip

24. Based on training and experience it is believed the second page is a partial ledger used to track purchases or debts repaid to Crippy (Deshawn LEWIS).

25. On July 27th, 2021, investigators obtained State of Ohio search warrants for LEWIS's Facebook, Instagram, Google, and ICloud accounts.

26. A review of the ICloud account cripface4454@icloud.com provided multiple pieces of evidence allowing investigators to further understand LEWIS's DTO. Multiple videos and photos were observed on the ICloud where Deshawn LEWIS can be seen holding large sums of cash, weapons, and suspected drugs. Based on training and experience, the amount of suspected drugs observed were far greater than any amount that would be

10

possessed by a user and are indicative of a major drug trafficker.  Many of the pictures and videos were geotagged to the location they were taken or received at. To follow is a list of the multiple pieces of evidence located within the ICloud and how investigators have been able to relate it to the investigation.

27. Within the ICloud return belonging to LEWIS a text message conversation between LEWIS and the contact name "Zap" who was determined to be LEWIS's sister, Nashiba N. Radcliff. The conversation which began on 10/4/2019 through 4/23/21 shows Nashiba Radcliff's involvement in LEWIS's DTO and her assistance with movement of cash, drugs, renting properties, paying for the rented properties, and offers insight into Deshawn LEWIS's operation.

28. Nashiba Radcliff chats with LEWIS on prices of prescription drugs methamphetamine and selling the drugs.  Nashiba Radcliff and LEWIS have a conversation about a package which was supposed to be delivered to Nashiba Radcliff's residence at 875 Chittenden Avenue Columbus, OH 43201.  The conversation details how the package was never delivered, and they believed the mailman may have stolen the package.  Nashiba Radcliff submitted a claim to have the package redelivered and LEWIS cautions her not to touch it and he will have a "geek" come over to get it. Investigators know the term "geek" to be used to describe narcotics users.

29. Based on training and experience your affiant knows drug dealers commonly receive narcotics through the mail system and will pay individuals to accept the packages, often times paying other individuals to retrieve the packages from the final destination.

30. LEWIS directs Nashiba Radcliff to collect and send cash on numerous occasions. LEWIS directs Nashiba Radcliff to get money and provides the address of 307 Taylor

11

Avenue. LEWIS tells Nashiba Radcliff he has a person who is going to drive a truck belonging to Deshawn LEWIS to him. LEWIS asks Nashiba Radcliff if he can meet this person on "5th" and "give him the money." Nashiba responds with a series of videos showing her loading what appears to be a large amount of cash into a Bath and Body Works box and then wrapping the box with Christmas wrapping paper. LEWIS tells Nashiba Radcliff that "Rio" is trying to "drop that money" and then later confirms Nashiba Radcliff "got it." "Rio" has been identified as Mario Sydnor Sr.

31. Nashiba Radcliff also appears to utilize the banking system and cash sending applications such as Zelle. Nashiba Radcliff sent a video to Deshawn LEWIS of her in what appears to be a bank drive thru and the video shows a large amount of cash in the vehicle. Nashiba sends several screenshots of the Zelle app where she is sending money to "Deshawn Lemar." The screenshots show multiple transactions which total to $6,901 and $15,601.

32. James Haley has been identified by investigators and confidential sources as another member of LEWIS's DTO. Investigators have identified the phone number of 614-852-1538 as the phone number belonging to James Haley. Contained within the ICloud search warrant belonging to LEWIS are text messages between LEWIS and Haley. Below is a summary of the conversation between 9/26/2020 and 2/10/2021:

33. LEWIS sends James Haley messages where he instructs James Haley to take "Rio" (Mario Sydnor Sr.) his money or "bread." LEWIS also instructs James Haley to take "12 more yams of that food" to "Rio" (Mario Sydnor Sr.). The terms "yams" and "food" are common slang terms referring to narcotics. James Haley also sends LEWIS several text messages where he gives LEWIS what appears to be drug counts and talking about where he picked up money and dropped off drugs.

12

34. Based on training and experience your Affiant believes the text messages between James Haley and LEWIS show LEWIS directing James Haley to deliver his money to Mario Sydnor Sr. and other directions of drug trafficking.

35. Contained within the ICloud account belonging to LEWIS were text messages between himself and Mario Sydnor Sr. (Big Rio). Mario Sydnor Sr. phone number is identified as 614-589-0551. The following is a summary of the text message conversation between Mario Sydnor Sr. and LEWIS between the dates of 8/29/20 to 4/19/21.

36. LEWIS and Mario Sydnor Sr. have numerous conversations regarding money. LEWIS instructs Mario Sydnor Sr. to facetime the number 614-971-0717 to pick up "bread". In LEWIS's Icloud account, the number belongs to the name "Staccs Shadudy," who has been identified as Micaiah Harris DOB 7/1/1997.  The conversations between LEWIS and Micaiah Harris talk about "the count" and "Rio" getting the same "count."  Your Affiant knows through training and experience, the term "the count" is often used a slang terminology referring to narcotics trafficking.  LEWIS also sends a video to Mario Sydnor Sr. where LEWIS has several large stacks of money.  The third stack of money, LEWIS says "thirty six hundred, two zips."  Your Affiant knows from training and experience, the term "zip" is a slang term often used to describe an ounce of narcotics.

37. Several times throughout the text message thread Mario Sydnor Sr. commonly tells LEWIS to Facetime him and reminds LEWIS not to text. Your Affiant knows from training and experience drug dealers commonly will communicate through Facetime or phone calls to better conceal illegal activity.

38. In a video posted to YouTube on or about November 9, 2020, titled "Crippy Ball or Be Broke Official Video" Lewis is shown with large amounts US Currency, high-end

13

vehicles. and what appears to investigators to be expensive jewelry. Several people appear in the video including Mario Sydnor Sr and Larry "Lil Larry" Smith. Smith is shown wearing his S.N.P necklace (Short North Posse) SMITH is currently under indictment in the United States District Court for the Southern District of Ohio Case 2:21-CR-70 for firearm possession and possession with intent to distribute fentanyl. LEWIS graphically details how his DTO operates. Lewis raps:

- *"In a truck with a slut and she got a fake butt she break down a bale and put it in the mail and we put on the scale now we got that shit for sale. $3,000 for a pound maybe $20 for a gram."*

- *"Put a dummy on a plane get that shit to the O get the money counters out and facetime with Rio."* (At this point in the video Mario Sydnor Sr AKA Rio is shown with US Currency).

- *Point me to the stove and the scale you know im up put the soda in the blender im gonna cook it up."*

39.     In a video posted to YouTube on or about October 25, 2020, titled "Helluva Nigga Official Cutboy Crippy" LEWIS is shown with large stacks of United States Currency and jewelry. Featured in the video is a rapper with the name "Lil Top". Lil Top is shown wearing a necklace with "SNP". The video has the hashtags #freediggs, #freefreezepop, #RIPbodybagboobs. Shown during the video are Troy Locke, Thomas Coates, Dewyshawn Cox, and Mario Sydnor Sr. Thomas Coates and Troy Locke are currently under indictment in Franklin County Ohio Common Pleas case 21CR002968 for engaging in corrupt activity, and trafficking in drugs both are felonies of the first degree. Locke has previously been sentenced to 120 months of imprisonment in United States District Court for the Southern District of Ohio Case

14

2:06CR265 conspiracy to distribute cocaine base. Thomas Coates has previously been sentenced to 84 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for Racketeering in what is commonly referred to as the "Short North Posse Trial". The following are quotes by LEWIS from the video.

- *"Phone hittin getting richer off that dope in the picture"*

- *All blues been crippin I do cash and deliver."*

- *"White puffs I got it out of the blender"*

- *"With them Short North Niggas I just don't give a fuck."*

- *"Free ODog"* (Christopher "ODog" Harris is serving a life sentence from United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering, murder in the aid of racketeering, and several other convictions.

- *"Free Tysin"* Tysin L Gordin has previously been sentenced to 96 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering.

- *"Free Freeze Pop"* (has previously been sentenced to 120 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering

- *"Free Frog Nigga"* Deounte Ussury is serving a life sentence from United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering, murder in the aid of racketeering, and several other convictions.

15

40.    The following are photos or screenshots of videos relating to drug trafficking taken from the ICloud account of LEWIS. In several of the videos a voice can be heard narrating the video. Investigators believe it is LEWIS narrating the videos.



Photo of suspected narcotics taken on or about December 14, 2019.



Screenshot from a video showing large amounts of suspected methamphetamine in several suitcases. Video was sent in a message to "Kev Bang" on or about July 5, 2020.

16

## FINANCIAL ACTVITY

41.     Records received from the Ohio Department of Taxation show that LEWIS has not filed personal income returns for 2017-2020 nor has he filed any business taxes from 2017-2021.

42.     The following are photos showing LEWIS with large amounts of US currency and or jewelry.



Lewis with "money phone", jewelry, and necklace with CF taken on or about April 10, 2021.



LEWIS with US Currency taken on or about May 14, 2020.



Lewis with US Currency taken on or about February 28, 2020



Lewis with jewelry and necklace with CF.



Rolex watch from Johnny Dang & Co with $56,000 value.



Lewis with "Crippy"
and CF necklace

## TIES TO TARGET NUMBER (614) 974-4488

43.    On or about September 20, 2021, investigators received records from T-Mobile for the Target Cell Phone. Records for the account showed that the subscriber was Deshawn LEWIS with an activation date was 04/26/2021.

## AUTHORIZATION REQUEST

44.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

45.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

20

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

46.     I further request that the Court direct T-MOBILE to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-MOBILE. I also request that the Court direct T-MOBILE to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference T-MOBILE's services, including by initiating a signal to determine the location of the Target Cell Phone on T-MOBILE's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

47.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

48.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

21

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Samuel Chappell
Task Force Officer
ATF

Subscribed and sworn to before me on Oct 7, 2021

UNITED STATES MAGISTRATE JUDGE
CHELSEY M. VASCURA

22

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (614) 974-4488, whose wireless service provider is T-MOBILE, a company headquartered at 4 Sylvan Way Parsippany, New Jersey 07054.

2. Records and information associated with the Target Cell Phone (614) 974-4488 that is within the possession, custody, or control of T-MOBILE.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-MOBILE, T-MOBILE is required to disclose the Location Information to the government. In addition, T-MOBILE must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-MOBILE's services, including by initiating a signal to determine the location of the Target Cell Phone on T-MOBILE's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1956 (a)(1)(A)(i) (Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity) 18 U.S.C. § 1956 (a)(1)(B)(i)(Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) involving **LEWIS.**